

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 MAR 10 AM 11: 03

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 69336-1-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANGEL MICHELLE DAVIS | ) | |
| | ) | |
| Appellant. | ) | FILED: March 10, 2014 |
| | ) | |

DWYER, J. — Angel Davis appeals from the judgment entered on a jury's verdict finding her guilty of forgery in violation of RCW 9A.60.020(1)(b). Davis was arrested and charged with forgery after depositing a sizeable check into her account at the Crossroads branch of Key Bank just minutes after opening a checking account at the Overlake branch of Key Bank. On appeal, Davis claims that she was denied a fair trial as the result of asserted improper conduct engaged in by the prosecutor during both closing and rebuttal argument. Finding that no improper conduct occurred, we affirm.

I

On October 24, 2011, Davis opened a checking account at the Overlake branch of Key Bank. Kelly Alaghemand and Brandon Hamblin, two Key Bank employees, assisted Davis in opening her account. Although Davis expressed

concern about passing a credit check, she provided Alaghemand with personal information necessary to open an account, including her Social Security number and her employer, which, she claimed, was Whole Foods. Davis initially said that it was her day off but later indicated that she was in a hurry because she was on her lunch break. Although the account was free, Davis was required to deposit a minimum of $50.00 when opening the account, which she did. She did not make any other deposits at that time.

After Davis left, Alaghemand and Hamblin both expressed reservations about Davis, primarily because of her inconsistent statements regarding her job at Whole Foods. Hamblin called Whole Foods in an effort to verify Davis's employment, but was unable to do so. Meanwhile, Alaghemand reviewed Davis's new account and discovered that a check for over $2,500 had just been deposited into the account from the nearby Crossroads Key Bank branch. She notified Hamblin immediately who called the Crossroads branch and spoke to a teller there, Tina Responte.

Responte told Hamblin that Davis had just been at the branch and that she had deposited a check that was made out to her and drawn on the US Bank account belonging to Teriyaki Wok. Responte testified at trial that Davis had wanted to cash the check, but because the account was new, there was a "new account hold" that prevented her from cashing it. After learning what had happened, Hamblin told Responte to place an additional hold on the funds. Responte testified that, two days after Davis deposited the check, Davis returned to the Crossroads branch, approached Responte's teller window, and asked to

withdraw the total amount of the check that she had previously deposited. Responte told her that the funds were still on hold and would be released once the check cleared. Davis then asked for the check back. After Responte told Davis that the check had already been processed and could not be returned, Davis argued with Responte for several minutes before leaving. Several weeks later, Key Bank closed Davis's account and sent Davis a cashier's check in the amount of the funds deposited into her account. Thereafter, Key Bank was notified by US Bank that the check was "not good."

Teriyaki Wok, a restaurant in Renton, has a bank account with US Bank. On October 24, 2011, the owner of the restaurant, Keuk Phong, discovered that a check made payable to Angel Davis in the amount of $2,567.36 had recently cleared his account. As Phong did not know anyone named Angel Davis, he went to the location where he kept his checks and discovered that an entire book of checks was missing. Upon discovering the missing checks, he reported the loss to US Bank and to the Renton Police Department.

The Renton Police Department assigned Officer Kristen Knott to investigate. Nearly two months later, Knott arrested Davis. The prosecutor charged Davis with forgery.

At trial, Davis testified that the check had been given to her by a woman named Rita Wynn as payment for bookkeeping work that Davis had performed for her. Davis testified that Wynn had approached her at the library and offered her a job. Wynn then came to Davis's residence and provided her with a box of receipts that she wanted organized and entered into a ledger. Davis testified that

Wynn told her that Wynn owned a restaurant. Once Davis completed the work, she asserted, Wynn gave her a check and asked her to wait several days before cashing the check in order to ensure that sufficient funds were in the account.

Davis further testified that she had intended to deposit the check at the Overlake branch but, upon arriving, had misplaced it and did not find it in her car until she left the Overlake branch. Davis admitted that she had lied to Hamblin and Alaghemand about her employment at Whole Foods but stated that she did so because she "didn't want to go into a long spiel about what I actually did, which is taking care of my grandmother." Additionally, Davis maintained that she never tried to cash the check at the Crossroads branch, contrary to Responte's testimony but, rather, that she tried to "take out $25 of my own money."

At trial, Hamblin testified as a witness for the State. During direct examination, the prosecutor attempted to elicit testimony from Hamblin regarding "specialized training or education [he had] with regard to fraud." As Hamblin described his training, Davis objected, asserting that the State had failed to disclose Hamblin as an expert witness. After the jury had been excused, the prosecutor—in an effort to qualify Hamblin as an expert—told the judge, "I am intending, if the court allows me to ask him, a generalized question about his experience as to people bank hopping, why that has significance to someone who works at a bank, do people who are committing fraud tend to go from bank to bank." The trial court sustained Davis's objection. Although the State was precluded from qualifying Hamblin as an expert witness, the State did elicit testimony from him as a lay witness that Davis's conduct in opening her account

and depositing the check raised "red flags."

A jury found Davis guilty as charged. The trial court sentenced Davis to 30 days of electronic home detention and ordered her to pay restitution to US Bank. Davis appeals.

II

On appeal, Davis condemns the prosecutor's conduct during closing and rebuttal argument, contending that prosecutorial misconduct deprived her of a fair trial. The prosecutor's conduct was improper and prejudiced her defense, she asserts, because the prosecutor (1) argued facts not in evidence and (2) effectively testified as an expert on the behavior of persons who commit fraud. We disagree.

"A defendant who alleges improper conduct on the part of a prosecutor must first establish the prosecutor's improper conduct and, second, its prejudicial effect." State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). "At trial '[c]ounsel are permitted latitude to argue facts in evidence and reasonable inferences' in their closing arguments." Dhaliwal, 150 Wn.2d at 577 (alteration in original) (quoting State v. Smith, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985)). "Moreover, the prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994).

We review any allegedly improper statements "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." Dhaliwal, 150 Wn.2d at 578. However,

even when a prosecutor engages in misconduct, such actions do not constitute "grounds for reversal if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." Russell, 125 Wn.2d at 86. Ultimately, in order to show prejudice, the defendant must establish that "there is a substantial likelihood that the misconduct affected the jury's verdict." State v. Copeland, 130 Wn.2d 244, 284, 922 P.2d 1304 (1996). "The absence of a motion for mistrial at the time of the argument strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).

Davis first assigns error to the following statement made by the prosecutor during closing argument:

> She goes to the one bank, she opens the . . . account . . . says nothing about the check. Not one word. And then minutes later she's at the next bank with a new teller, somebody who hasn't seen her, trying to get the money. The bank is a couple minutes away. Who does this? Who does this? Well, Brandon Hamblin, the bank manager, told you people who are trying to defraud the bank do that.

Davis objected, asserting that the prosecutor was arguing facts not in evidence. Instead of ruling on the objection, the court issued a cautionary instruction: "The jury is going to have to rely on their memory of the evidence to see if it supports the argument."

The prosecutor's conduct was not improper. During direct examination of Hamblin, the prosecutor elicited testimony indicating that Davis's behavior in

depositing the check at a different branch within minutes of opening an account raised a "red flag." Indeed, the prosecutor, in closing argument, identified five "red flags" supporting the inference that Davis knew that the check was forged and intended to defraud the bank. Viewed in the context of Hamblin's testimony, Alaghemand's testimony, and Responte's testimony, the prosecutor's argument that "people who are trying to defraud the bank" engage in "bank hopping" and that "Brandon Hamblin told . . . you that" was reasonable.

The testimony supports the prosecutor's argument. Although Hamblin did not use the same words that the prosecutor used, he did testify that Davis's behavior was concerning in light of the fact that most fraud is committed shortly after a new account is opened. For her part, Alaghemand testified that she was so concerned upon learning that Davis had been at the second branch within minutes of opening the new account at her branch that she immediately reported this to Hamblin, her manager. Responte, in response to the question, "[w]hat did you think about the fact that the defendant just came in, or came into your bank and tried to cash a check after she just opened an account somewhere else?" answered "nobody does that, unless you are hiding something." This testimony supported the inference argued by the prosecutor that Davis intended to defraud the bank.

Davis next assigns error to the prosecutor's statement that, "I would submit to you that people who are trying to defraud the bank and avoid detection do this all the time." Davis contends that this statement amounted to the prosecutor testifying as an expert witness. This is so, she asserts, because the

prosecutor's argument mirrored the testimony that the prosecutor intended to elicit from Hamblin had the judge permitted him to testify as an expert witness.

Again, the prosecutor's conduct was not improper. This inference is supported by the testimony of Hamlin, Alaghemand, and Responte. That the prosecutor prefaced the statement with "I would submit to you" does not change that fact, especially in light of the fact that the jury had already been instructed that statements made by the lawyers did not constitute evidence.[1]

Davis finally assigns error to the prosecutor's statement during rebuttal argument regarding police interviews with Responte that had not been admitted into evidence:

> The defense wants you to totally discredit her testimony because when she gave a paragraph long statement to the police over the phone when she was at work, and she didn't include every single detail in that, that she has included in three other interviews that have taken place over nine months—

Davis objected, asserting that the prosecutor was again arguing facts not in evidence. However, the court did not rule on the objection. Moreover, Davis did not move to strike, did not request a curative instruction, and did not move for a mistrial.

The prosecutor's conduct was not improper. The prosecutor's statement

---

[1] The pertinent language from the jury instructions is as follows:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

Jury Instruction 1.

was in response to defense counsel's contention that—because Responte had not initially mentioned to Officer Knott that Davis had tried to cash the check the first time she came in, but had testified at trial that Davis had in fact tried to cash the check—Responte did not remember what had happened and that the jury should discredit her testimony. In response to defense counsel's attack on Responte's credibility, the prosecutor offered an explanation for the inconsistency, which the prosecutor was entitled to do. Although the prosecutor did misstate the number of out-of-court statements Responte gave, it was a minor error, and it was made in response to defense counsel's attack on Responte's credibility. Viewing this misstatement "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions," Dhaliwal, 150 Wn.2d at 578, we do not conclude that it was improper.

Affirmed.

We concur: